## CORDELLA H. A. BAKER v. G. W. DUNNING.

### No. 6622.

1. **County School Lands—Actual Settlers.**—Section 6, article 7, of Constitution, providing that "actual settlers residing on said lands shall be protected in the prior right of purchasing the same to the extent of their settlement, not to exceed 160 acres, at the price fixed by said (County) Court," etc., was intended to apply to future settlers, as well as to those residing upon the lands at the time the Constitution was adopted.

2. **Same.**—While recognizing the decision in Milam County v. Bateman, 54 Texas, 183, that the State can not take from the counties lands once granted them for school purposes, it is *held* that the provision of the Constitution regulating their sale is not destructive of the right of ownership in the counties of their school lands.

3. **Settlers upon County School Lands.**—The rights of settlers upon the county school lands discussed, also as to manner such rights should be asserted, etc. The county commissioners should fix price and give settlers opportunity to buy.

APPEAL from Taylor. Tried below before Hon. T. H. Connor.

The opinion states the case.

*Sayles & Sayles,* for appellant. — 1. The court erred in holding that a settler upon county school lands was entitled by reason of his settlement only to demand of a purchaser of county school lands the conveyance to him (such actual settler) of the land bought by such purchaser from the county.   Const., art. 7, sec. 6; Perkins v. Miller & Sayers, 60 Texas, 61; Young v. O'Neil, 54 Texas, 544; Turner v. Ferguson, 58 Texas, 6.

2.   The court erred in holding, in effect, that appellee was not required to do any act whatever except to settle on the land, and in giving judgment for the defendant in the absence of any proof that appellee had done anything else than settle on the land.

3.   The court erred in holding that Grimes County had no vested rights of property to her school land, and that the Constitution of 1876 could engraft on the title of Grimes County the onerous condition of the preference right of an actual settler to buy 160 acres of such school land. Milam County v. Bateman, 54 Texas, 153; Act of Jan. 16, 1850.

*Bentley & Bowyer, H. A. Porter,* and *Cockrell & Cockrell,* for appellee.— 1.   An actual settler upon school land belonging to a county has the prior right to purchase such land, not to exceed 160 acres (including his improvements), at any price and on any terms that may be fixed by the Commissioners Court of such county.   Const., art. 7, sec. 6; Rev. Stats., art. 4037; Perkins v. Miller & Sayers, 60 Texas, 61.

2.   The school lands of counties are held by them in trust for school purposes, subject, however, to the general control of the State, so long as such contract does not violate the objects of the trust.   Perkins v. Miller & Sayers, 60 Texas, 61; Const., art. 7, sec. 6; Milam County v. Bateman, 54 Texas, 153; Const. 1869, art. 9, sec. 8.

GAINES, ASSOCIATE JUSTICE.—The appellee Dunning settled upon the school lands belonging to Grimes County in 1884, and continued to reside there until the bringing of this suit.   In 1886 the Commissioners Court of that county caused these lands to be advertised for sale and to be sold.   Buffington, McDaniel & Baker became the purchasers of the entire tract at $2.45 per acre, and the lands were conveyed to them.   They subsequently conveyed to appellant, who brought this suit to dispossess the appellee of so much of the premises as were occupied and claimed by him.   Appellee in his answer claimed a right to possess and a prior right to purchase 160 acres of the land, including his improvements, by virtue of section 6 of article 7 of the Constitution.   After the sale to Buffington, McDaniel & Baker, appellee tendered both to them and to the Commissioners Court of Grimes County money and his promissory notes in amount sufficient to pay for 160 acres of land at $2.45 per acre.   His offer was based upon the same terms for the 160 acres claimed by him as those upon which the county had sold the land to Buffington, McDaniel

& Baker.    There was a judgment in favor of the settler, and the plaintiff appeals.

The case presents questions which have hitherto been suggested in this court but have never been determined.    In Land Company v. Wood, 71 Texas, 460, the court recognized the right of a settler who was residing upon county school land at the time of the adoption of the present Constitution to a pre-emption of as much as 160 acres of land, including his improvements.    In that case the settler had offered to buy of the county before the land was sold by it to his adversary in the suit.    In Falls County v. De Laney, 73 Texas, 463, it was held that the county had the right to lease its lands, and that a settler could not lawfully interfere with that right.    In that case there was a suggestion that there was a question whether section 6 of article 7 of the Constitution was intended to apply to those who might thereafter settle upon lands held by the counties for school purposes, and also there was a doubt expressed as to the extent to which the State could regulate the control of. the counties over the school lands.

The appellant does not insist that the section was not intended to apply to future settlers; but we have had some difficulty in determining that question.    We have considered, however, that there was probably a predominant sentiment in the convention that framed the Constitution to give a right of pre-emption of the public lands to actual settlers in so far as it could be done without interfering with other objects and without prejudice to vested rights.    It was probably intended not only to favor the class of persons who were likely to avail themselves of the privilege, but also to encourage the settlement of the vacant lands of the State.    Besides, the language of the section is sufficiently comprehensive to embrace not only settlers residing upon the lands at the time the Constitution took effect,. but also such as might thereafter settle upon them. If it had been the purpose to limit the operation of the provision to the former class, that intention could have been made clear by simply saying "settlers *now* residing on said lands shall be protected," etc.    We conclude that the section was intended to apply to future settlers as well as those residing upon the lands at the time the Constitution was adopted.

It is insisted, however, that the counties have a vested right in their school lands which the State has no power to impair, even by a constitutional enactment, and that the provision in question is an infringement of that right.

In Milam County v. Bateman, 54 Texas, 183, it was held that the State could not take from the counties the lands which had been donated to them for educational purposes.    We are of opinion that that decision should be adhered to.    If it were an open question we might have difficulty in coming to that conclusion.    The counties being but political subdivisions of the State and quasi corporations created by the State for

the more convenient administration of its laws, we incline to the opinion that they hold their property as they hold their existence—at the will of the State; or that at least what has been given to them by the State for the purposes of government they hold in trust, and that it is subject to be resumed by the State at its pleasure. But considering the proposition that the State can not take from the counties their school lands as settled by the case last cited, the question recurs whether the right of pre-emption conferred by the section of our Constitution under consideration is such an interference with the grant of the State to the counties as to render it repugnant to the Constitution of the United States. We think this question must be answered in the negative. The grant was by no means absolute. It was for the purpose of assisting in maintaining a system of public schools; and it is to be presumed, we think, that in the grant the State impliedly reserved, or at all events did not part with, its power to regulate the mode in which the trust was to be administered. Let it be conceded that the State can not revoke the grant either in whole or in part, and that it can make no law which impairs its value, still it should be held that the provision in question is valid. That it does not compel a sale, we held in Falls County v. De Laney, *supra.* We there held also that the settler could not even obstruct the right of the county to derive a revenue from its lands by a lease. The provision does not require the county to sell to the settler at any fixed price or at a less price than to any other purchaser, but merely that when it determines to sell, everything else being equal, the possessor shall have the prior right of purchase. The county may fix its price and terms and tender the land to the settler at the price and upon the terms so fixed. If he reject the offer it is free to sell to another. It loses nothing by the operation of the law.

It is also urged, in effect, that the court should have held that the appellee had forfeited his right of pre-emption because he failed to take any steps to secure the land until it was sold to appellant's vendors. The respective rights of the settler and of the county in cases like this are not clearly defined in the Constitution. The language of section 6 of article 7 is however emphatic that settlers "shall be protected in their prior right to purchase." If the counties can, without an offer to the settlers and without actual notice brought home to them, sell the lands to others, the provision would be of no value whenever a Commissioners Court should desire to thwart its purpose. The settler would not be protected. But it may be argued that the settler should at least file a notice of his desire to purchase with the Commissioners Court of the county to which the land belongs. It would hardly be reasonable to require this until he has notice that the county has determined to put the lands upon the market. On the other hand it would seem but reasonable that when a county has decided to sell its lands the Commissioners Court should fix in good faith a price upon each parcel that is occupied

by a settler, as well as the terms of the sale, and should then afford him a reasonable opportunity to buy the land at the price and upon the terms so fixed. Governed by this rule the county need not lose anything, and the settler will receive the protection the Constitution was intended to afford.

It follows, in our opinion, that the court below did not err in holding that the purchasers from Grimes County did not acquire through their purchase a right to the land in controversy as against the appellee, and in giving judgment in his favor. So much of the judgment as permits the appellee to perfect his title by paying to appellant the same price per acre that his vendors agreed to pay the county is not complained of, and we do not pass upon the question of its correctness.

The judgment is affirmed.

*Affirmed.*

Delivered April 15, 1890.