### R. M. ELLARD v. R. M. COX ET AL.

Decided October 24, 1908.

**1.—School Land—Authority of Commissioners' Court—Sale—Option.**

The power of a county to sell or lease its school land includes by implication the power to give its lessee an option or preference right to purchase the land, especially where the option is granted as an incident to and in furtherance of the lease. This is evidenced by the provisions of the Constitution, the decisions of the courts, and the laws giving a like privilege to lessees of State school land.

**2.—Same—Estoppel.**

Plaintiffs held a lease upon county school land with a preference right to purchase should the county offer the same for sale; the county did offer the land for sale and the plaintiffs, together with several other parties, became the joint purchasers, plaintiffs waiving their preferred right to buy for the benefit of their copurchasers, but stipulating that in the event any one of said copurchasers should fail to take the part allotted to him, plaintiffs should have the right to pay for and take such part; one of said copurchasers failed to consummate the purchase of his part and attempted to transfer his right to his copurchasers. Held, the stipulation and reservation to plaintiffs of the preferred right to buy the interest of the defaulting purchaser, was valid, and the other copurchasers were not in a position to repudiate the same.

**3.—Same—Agreement to Buy—Competition.**

Where a county, by its properly constituted authority, offers to sell its school land and voluntarily fixes a price on the same, the fact that several prospective purchasers combine and buy the land jointly at the price and upon the terms demanded by the county, would not render the agreement between the purchasers as to the joint purchase and the division of the land among themselves, void as tending to prevent competition, in the absence of evidence that the land did not sell for its value or that the sale was unfairly made.

**4.—Same—Parties.**

Where a county sells its school land to several parties as cotenants, taking their joint note for the purchase money and a lien upon the entire tract to secure the same, the county is not a proper party in a suit between the purchasers as to their respective rights.

Appeal from the District Court of Hale County. Tried below before Hon. L. S. Kinder.

*Randolph & Penry* and *Stephens & Miller,* for appellant.—Express trust by parol good in Texas: James v. Fulcord, 5 Texas, 512; 55 Am. D., 743, and notes; Allen v. Allen, 105 S. W., 53; 107 S. W., 528 (agreement contemporaneous in case at bar).

Especially contracts to acquire land: Barnett v. Vincent, 69 Texas, 685; Watkins v. Gilkeson, 10 Texas, 340; Thompson v. Ikard, 81 Texas, 285.

Also parol partition: Stuart v. Baker, 17 Texas, 420.

Parol agreement of two or more to purchase jointly, and divide land, between them enforcible, one promise being consideration for the other: James v. Fulcord, 5 Texas, 512, and cases cited in Texas Notes, vol. 1, pages 202 and 203.

*Patton & Schwartz, Denman, Franklin & McGown, J. A. Kibler* and *O. A. McCracken,* for appellees.—The court does not find that there was any agreement between the parties that Ellard and Lewis should have the right to any land that any of the purchasers might fail to pay for. On the contrary, the court does no more than find that Ellard and Lewis indicated their willingness to take from the county any of the land which any of the proposed purchasers did not take. This willingness or agreement on the part of Ellard and Lewis is found by the court to have been expressed in a conference before the parties announced to the Commissioners Court that they would purchase the land on the terms upon which the county was willing to sell. After such conference the parties, including Cox, went before the Commissioners Court, accepted the county's of-

fer to sell, executed the purchase-money note to the county, accepted the county's deed to the land, executed and delivered deed of trust to secure the purchase-money note, paid the two years' interest in advance required by the county, Cox issuing his check therefor, which was accepted by the county, and the purchase from the county was thus consummated as to all the parties. Cox could not have defeated the county in the collection of the amount covered by his check, nor in the enforcement of the payment of the note, nor in a foreclosure of the deed of trust in the event of any default in the payment of the note. It necessarily and logically follows, therefore, that if Ellard and Lewis were given the right to acquire the 4,000 acres in the event that Cox did not purchase same, this condition never arose, for Cox did in fact purchase same. Having become a purchaser, Cox had the right to dispose of his interest as he saw proper, and this interest passed to Green and Welhausen and Dilworth under the purchase from Cox. Allen v. Allen, 107 S. W., 528; Powers v. Minor, 87 Texas, 85; Glover v. Thomas, 75 Texas, 507.

As the purchase by Cox from the county was complete, and title vested in him by a deed from the county, no parol agreement between him and Ellard and Lewis that he would convey such interest to Ellard and Lewis is enforcible, it being violative of the statute of frauds. Allen v. Allen, supra; Dial v. Crain, 10 Texas, 443; Van Hook v. Simmons, 25 Texas, 323; Thomas v. Groesbeck, 40 Texas, 530.

If Ellard and Lewis ever had any binding option with the county for the purchase of Wilson County school lands, this option was necessarily surrendered when the purchase was made from the county and the instruments evidencing such purchase executed and delivered. In fact, the acceptance of the county's offer to sell by all the parties, Ellard and Cox included, necessarily waived any option they might have had and converted same into a purchase. The consideration expressed in the deed of conveyance is a moneyed one, and if there was an additional consideration consisting of an agreed right in Ellard and Lewis to acquire the interest of any of their co-purchasers in the land, such additional consideration would be a contractual one, and its proof by parol would vary and contradict the terms of the written instrument, and such proof was not admissible over the objections of the defendants made thereto, nor, if admitted, could it be made the foundation of any enforcible right in Ellard and Lewis. Coverdill v. Seymour, 94 Texas, 8; Belcher v. Mulhall, 57 Texas, 17; Wooters v. International & G. N. Ry., 54 Texas, 299; East Line & R. R. Ry. v. Garrett, 52 Texas, 133; Bedwell v. Thompson, 25 Texas Sup., 246; Adams v. Hicks, 41 Texas, 243; Weaver v. City of Gainesville, 21 S. W., 317; Jackson v. St. Paul & K. C. Ry. Co., 54 Mo. App., 636; Purinton v. Northern Illinois Ry., 46 Ill., 279; Brintnall v. Briggs, 87 Iowa, 538; 6 Am. & Eng. Ency. Law, 775.

If Ellard and Lewis had any enforcible option with the county for the purchase of its school lands, such option covered only a purchase of the whole of the lands, and not any part of same, and when Ellard and Lewis surrendered the option as to a part of the land the entire option contract was necessarily abrogated, and no right remained in Ellard and Lewis to acquire from the county any part of the school lands. James v. Darby, 100 Fed., 228.

The county of Wilson could only act through its constituted authori-

ties, and in order for them to bind the county their acts must have been official in their character and officially done in the manner required by law. No parol agreements, understandings or conversations had with any of the officers of the county or between the purchasers could in any way bind the county. The action of the County Court, as shown in the written resolutions and the written instruments executed thereunder, can only be looked to for the purpose of determining the transaction under consideration. These instruments show a sale to Cox and others, the execution of the deed evidencing said sale, the acceptance of the purchase money paid, the acceptance of the note executed by the purchasers, and the deed of trust executed by them, and that all of this was done with the knowledge and consent of Ellard and Lewis, and establishes a complete and unconditional conveyance to Cox and others. Fayette County v. Krause, 73 S. W., 51; Bryan City v. Page, 51 Texas, 534; Brown v. Reese, 67 Texas, 318; Wagner v. Porter, 56 S. W., 560.

Under the Constitution, the county commissioners of the several counties of the State are limited, in their powers over the county school land, to the power to sell and the power to lease. The power to sell land or lease land does not include the power to grant an option to purchase. Constitution of Texas, art. 7, sec. 6; Pulliam v. Runnels County, 79 Texas, 369 (approved in Dallas County v. Club Land & Cattle Co., 95 Texas, 206-7); W. B. Trogden v. R. J. Williams, 56 S. E., 865; 10 L. R. A., 867 (new ed.), and note citing Ives v. Davenport, 3 Hill, 373, and Field v. Small, 17 Colo., 386.

CONNER, CHIEF JUSTICE.—This is an appeal from a judgment denying appellant's right to an undivided interest of four thousand acres in the four leagues of school land originally owned by Wilson County and sold in May, 1906, to R. M. Ellard, W. B. Lewis, R. M. Cox, William Green, Philip Welhausen, R. S. Dilworth, S. V. Houston and J. C. Houston jointly. As originally awarded by agreement among the purchasers, hereinafter noticed more fully, Ellard and Lewis were to take seven thousand, eight hundred and fifty-six acres; R. M. Cox, four thousand acres; William Green, two thousand acres; Philip Welhausen, R. S. Dilworth, S. V. Houston and J. C. Houston, nine hundred and sixty-four acres each. Appellant Ellard is, by subsequent purchase, the undisputed owner of the interest of his partner Lewis, and the suit was instituted by him against all of the other parties named. R. M. Cox and S. V. and J. C. Houston, however, disclaimed, the contest narrowing itself to the appellant on the one hand and the appellees William Green, Philip Welhausen and R. S. Dilworth, who claimed the interest of the disclaiming defendants by purchase on the other. The real contest is over the undivided interest of four thousand acres owned by R. M. Cox, appellant claiming the same by virtue of the terms of the agreement mentioned, and appellees claiming it under a transfer from Cox.

The case was tried before the court without a jury, and rests on findings of fact that are not questioned, substantially the only question before us being whether the facts found support the court's conclusions of law and judgment denying appellant the relief he sought.

The findings of fact are lengthy, and we will not undertake to set them out in full. They are adopted, however, in their entirety, and we

will here attempt to give such brief summary and parts thereof as will, we think, be sufficient to illustrate the conclusion to which we have come.

In January, 1905, Wilson County gave an absolute lease of the four leagues of land mentioned to M. G. Abernathy for five years, from January 1, 1905, giving the said Abernathy the preference right at the end of his lease to buy the land "at the highest bona fide bid or offer made by any responsible party, which is acceptable to said county, within sixty days after receiving a notice of such offer;" appellants Ellard and W. B. Lewis became the purchasers of the Abernathy lease and option, it being stipulated, however, that Wilson County should agree thereto. On February 14, 1906, Wilson County assented to the assignment of the Abernathy lease, and through its Commissioners Court authorized the following contract, which was entered in the minutes of the court:

"This agreement and contract made and entered into this, the 14th day of January, 1906, by Wilson County, through the Commissioners' Court, and W. B. Lewis and Reuben M. Ellard, whereby it is agreed and understood that the contract made and entered into by and between M. G. Abernathy, of Lubbock, Texas, and Wilson County, Texas, through its Commissioners Court on the first day of January, 1905, is this day assigned and transferred to W. B. Lewis and Reuben M. Ellard, each party to said contract assuming the obligation imposed by the same.

"It is hereby specially agreed that, should the said Wilson County procure a purchaser for the lands described in said contract, at a price and on terms satisfactory to the said county, then the said Ellard and Lewis are either to accept said land and themselves comply with the conditions of said sale without costs to said county for improvements that are now on said land, or that may hereafter be placed on same. And should said Lewis and Ellard not be willing to pay the price offered said county for said land, which said offer shall be a bona fide offer and made by a responsible person or persons, then in that event the said Lewis and Ellard are to have $3,500 for the improvements that may be then on said land, providing said sale is made within twelve months from the date of this contract. Should the said sale be made two years from said date, then the said Lewis and Ellard are to have $2,500 for said improvements; and should said sale be made after three years from the date of this contract, then the said Lewis and Ellard are to have $1,500 for said improvements, and shall surrender the possession of said land within ninety days from the time that the said offer by said county to sell is by said Ellard and Lewis rejected. Said Lewis and Ellard are to handle, and have handled, said improvements and the entire premises to suit their own convenience during the life of said lease, except outside fences, which belong to the said county and shall not be molested.

"The said Lewis and Ellard are to have and retain the option to release and purchase said lands according to the terms of said lease contract between Wilson County and the said M. G. Abernathy, with the exception above set out, which said lease contract is hereby referred to and made a part of this contract."

We here quote the following from the court's findings: "Thereafter, to wit, on May 17, 1906, at the May term, 1906, of the Commissioners Court of Wilson County, the said court offered said land for sale, and R. M. Cox bid $5 per acre for said land, which said sum was fixed by said

court at said term as the price for which said land would be sold. The plaintiff, R. M. Ellard, and his associate, W. B. Lewis, were present, and claimed their right to purchase said land under their option and lease contract. The defendant, Green, representing himself and Philip Welhausen, was also present, and the defendant Dilworth and others, all attempting to purchase said land. Thereupon the plaintiff Ellard, and his associate W. B. Lewis, R. M. Cox, Wm. Green, Philip Welhausen, R. S. Dilworth, and S. V. and J. C. Houston, all being present before said court on said May 17, 1906, and, after making various and different propositions and bids for said lands, retired from the courtroom, and in a consultation agreed among themselves that, in consideration of Ellard and Lewis releasing their option contract on said land, and removing all obstacles to the sale thereof by the county, to buy said land from the county at said price of $5 per acre, at which it was offered by the county, and it was further agreed that each would take the number of acres as follows: R. M. Cox, 4,000 acres; Wm. Green, 2,000; Philip Welhausen, R. S. Dilworth, S. V. Houston, J. C. Houston, each 964 acres, and R. M. Ellard and W. B. Lewis together, 7,856 acres, being all of the four leagues of said Wilson County school land, and each of the parties agreed to pay Ellard and Lewis the sum of 22.2 cents per acre for the amount of the land each was to receive above the amount they were to pay the county. This amount was paid—that is, was to be paid—Ellard and Lewis for their improvements and other expenses incurred by them on said land.

"I further find that said parties then, after making said agreement, went before said court and stated to the court that they would buy said land at the price of $5 per acre, and further stated to the court that each would take the amount of land as set out in the last finding above, and that the county of Wilson upon said 17th day of May by its county judge deeded said land to said parties without specifying in said deed the interest each party was to receive. That said land was sold to said parties at $5 per acre, and, according to the terms of payment, the note was to run forty years and bear five percent.

"I further find that under this agreement Cox was to pay Ellard and Lewis the sum of $888, which was at the rate of 22 cents per acre on the four thousand acres by him purchased, and that this contract was in parol.

"I further find that the parties in said conference on the said 17th day of May, prior to accepting the county's offer to sell said land, agreed that if any of the purchasers did not comply with his contract and take his part of said land, that Ellard and Lewis would take the amount of land which said purchaser failed to take and assume the indebtedness to the county, and that this contract was also in parol.

"I further find that on May 17, 1906, said county accepted said bid of said purchasers, and, by its county judge, in pursuance of the order entered upon said day, signed and acknowledged a deed to said land, and that on said 17th day of May the said Cox signed the note to the county for the said land, and also at the same time executed the deed of trust to said Wilson County to secure the payment of said note. That on said

day the said Cox left and was not present at any further negotiations of said trade.

"I further find that on said May 17, 1906, and prior to his leaving the county seat and returning home, the said Cox left with Wilson County his check for $2,000 on the First National Bank of Waco, Texas, as payment of the sum required to be paid by him to the said county upon the purchase of said land."

The other parties to the purchase also signed the purchase-money note and deed of trust to Wilson County, and made the several cash payments specified in the agreement among the purchasers, Ellard and Lewis about the same time filing with the clerk a formal waiver and release of their option, specifying, however, that it was not to become binding upon them "until R. M. Cox pays to us $888, the amount due us by him for improvements on said land." The release authorized the county to receive the amount claimed by Ellard and Lewis for improvements, and further provided that "when said papers have been so signed and said $888 so paid in, then all papers are delivered to you and the trade consummated. Should any of the parties above referred to fail to comply with the requirements above set out, then we accept his or their part under said option contract, and will comply with the terms of said sale in our own names and for ourselves, upon notice to us of that fact." The court further finds that R. M. Cox failed to pay Ellard and Lewis the said sum of $888, and on May 21, 1906, stopped payment of the check for two thousand dollars, which he had given Wilson County for the first payment of the land, and that on the 29th day of June, 1906, Ellard and Lewis made a legal tender to the Commissioners Court of Wilson County of the sum of two thousand dollars for the said Cox's interest in said land, but the Commissioners Court refused to convey the same to them. Thereafter, June 30, 1906, William Green, R. S. Dilworth and Philip Welhausen procured from R. M. Cox a quitclaim deed to said four thousand acres, and in September, 1906, the Commissioners Court of Wilson County released R. M. Cox from any obligation to the county arising from said purchase, and accepted Green, Dilworth and Welhausen as the purchasers of said four thousand acres of land. July 3, 1906, William Green paid to the county judge of Wilson County, Texas, the two thousand dollars that Cox failed to pay, and also $888 to satisfy the claim of Ellard and Lewis for improvements, but which Ellard and Lewis refused to accept.

*Opinion.*—We think the court erred in his conclusions of law and in the judgment rendered. The court's findings as a whole can mean but one thing, it seems to us, and that is that the parties named made an agreement, good in law, for the joint acquisition of land, in which it was specifically stipulated as a condition of the waiver of an existing option in Ellard and Lewis that, in event any one of the proposed purchasers failed to take the portion he had agreed to take, the option as against such failing party and all others entering into the agreement was to remain in operation, and Ellard and Lewis were to have the right to fulfill the undertakings of such defaulting party and to take the part of the land allotted to him in the agreement.

Appellees insist that the option was of no force, for that Wilson County

was without authority to give it. In view, however, of the policy of the State, as manifested in the Constitution and decisions, giving the actual settler on county school lands an option or preference right to purchase (see article 7, section 6, State Constitution, and Baker v. Dunning, 77 Texas, 28), and in the laws giving a like privilege to lessees of State school lands (Revised Statutes, article 4218w), at least a majority of us are inclined to hold that the conceded power of a county to sell or lease includes by implication the power to give its lessees an option or preference right to purchase where, as here, the option is granted as a mere incident to and in furtherance of the lease. But, however this may be, we are all agreed that appellees are in no position to question the validity of the Ellard and Lewis option. It was, at the time of the purchase in question, vigorously asserted by Ellard and Lewis, was not repudiated by Wilson County, and was recognized by appellees as an obstacle to their purchase. In settlement of the controversy Ellard and Lewis waived in part for appellees' benefit the privilege that had been acquired by them. The waiver, however, was, as in effect found by the court, upon the specific agreement of appellees that, in event Cox failed to take the part allotted to him, then Ellard and Lewis, and not appellees, should have the right to take it. Under such circumstances we know of no rule of law or morals that will support appellees in the breach of their own agreement, and give reward therefor.

It is suggested in appellees' brief that the agreement was void under well-settled line of authorities as tending to prevent competition among bidders. But nothing in the terms of the agreement appears to be intrinsically unfair. Appellees' pleadings only remotely and inferentially, if at all, attack the agreement on this ground, though it is fully declared upon in appellant's petition. Nor does the court make any such finding. Moreover, it appears from the facts found that Wilson County voluntarily fixed the price at which the land was sold, and there is not a suggestion that the land was of greater value or the sale unfairly made. We therefore have not searched the statement of facts to see if evidence may be found that in some phase would tend to support the theory suggested.

Appellees further insist that Cox, in fact, did take his allotment, and that his default is not within the agreement. But we are unable to accept this view of the transaction. Its spirit was not complied with on Cox's part. He but partially performed the necessary preliminary steps to full acquisition of right. He did not pay the $2,000 cash payment to the county, as agreed upon, nor Ellard and Lewis for their improvements. These were necessary conditions precedent required by the county in its sale, and upon Cox's default the county would have been well within its legal rights to at once decline to further consider Cox as having any interest in the matter. Moreover, Cox and appellees, if not Wilson County, could, by virtue of said agreement, have demanded that Ellard and Lewis take Cox's allotment and pay therefor. The mere fact that, in a certain technical sense, it may be said that a legal title passed to Cox by the county's deed can not, we think, alter the case. The deed does not invest the title to any specified number of acres in any particularly named individual, but invests it jointly in all. By the deed the title to the four thousand acres in controversy was vested in Ellard as well as in Cox. Cox's interest, if more or less than that of a mere joint owner of the

whole, is necessarily dependent on agreement, and on the amount of money paid by him in the acquisition. This apparent title in Cox, therefore, was but a bare fiction, or, at all events, was held by Cox, after his default, in trust for those beneficially interested. We do not think Cox took the land in the sense of the agreement, nor do we think the fact that the county took no action at the time, and subsequently accepted the money from appellees, and recognized them as the owners under the Cox quitclaim deed, of controlling effect. The county had expressly declined to convey in severalty. Its rights were fixed and limited by the deed jointly made to all, and by the note and trust deed all were required to jointly sign. Without resort to the agreement among the purchasers the county had no purely separate, individual demand against Cox, and no such title or right remained in the county as would enable it to divest a right that, by agreement among the purchasers, had been reserved in Ellard and Lewis, and confer it upon appellees. Its only interest or right was to enforce payment of the purchase money against all in any one or more of the ways the law provides, and neither the county nor appellees could in the indirect way attempted violate the agreement among the purchasers and confer a privilege upon appellees originally given to Ellard and Lewis.

By cross assignments appellees also insist that Wilson County is a necessary party to the suit. We are unable to see, however, what interest Wilson County has in the present controversy. As before observed, the rights of the county were fixed by the original transaction, and we regard its subsequent action in releasing Cox and recognizing appellees as wholly unauthorized. We therefore think the court properly overruled appellees' demurrers raising this question.

We conclude that the judgment should be reversed and here rendered for appellant as to the title of the four thousand acres in controversy in accordance with his prayer, and that the cause be remanded for partition in the manner provided by law upon appellant's paying into the registry of the court for the benefit of appellees the two thousand dollars, with legal interest, expended by them in fulfillment of Cox's undertaking.

*Reversed and rendered.*

Writ of error refused.