A. H. PARKER V. EL PASO WATER IMPROVEMENT DISTRICT NO. 1.

No. 4185. Decided June 22, 1927.

(— S. W., —).

**1.—Irrigation—Constitution—Improvement Districts—Riparian Proprietors.**

The organization of a water improvement district under the Act of 1917 (Laws, 35th Leg., Chap. 87) subsequently changed to a conservation and reclamation district under the Conservation Amendment (as authorized by Laws of 35th Leg., 4th Called Session, Chap. 25) was authorized by such statutes and the constitutional amendments providing for them. Though such district embraced land of riparian proprietor on a stream (Rio Grande River) who had been previously using its waters for irrigation through ditches of his own construction, the inclusion of his land in the district and its subjection to the obligation thereby imposed for the construction and maintenance of the district system of irrigation was not unlawful nor violative of the Constitution of the United States. (Pp. 637-641).

**2.—Same.**

If the lands of a riparian proprietor became lawfully included within an irrigation (conservation and reclamation) district, as riparian lands could legally be, they became entitled, in common with all other riparian lands included therein, to the benefits thereby conferred, and likewise subject to the duties and burdens incident to the organization and operation of the district. The lands here involved are held to have been lawfully so included, and the organization of the district embracing land in more than one county held valid. Trimmier v. Carlton, ante, p. 572, and other cases followed. (Pp. 637, 638).

**3.—Same.**

It was immaterial that the riparian proprietor did not desire his land placed in the district, or that he might not desire to irrigate it at all, or that he could irrigate it from a different source, or that his property did not receive a direct benefit from its inclusion. Fallbrook Irrig. Dist. v. Bradley, 164 U. S., 112. (Pp. 641, 642).

**4.—Same—Use by Riparian Owner of His Own Existing Ditch.**

Where the riparian proprietor already owned an irrigation ditch he could not be deprived of it nor of its use save by due process of law. His right to use his just proportion of riparian water flowing by his land was an incident to his ownership of it and was properly within the constitutional guaranties. But the facts here considered are held not to show an effort by the district to interfere with such use by him. (P. 642).

**5.—Same—Flood Water Impounded by the District.**

The riparian proprietor was entitled as such to the use for irrigation of his fair proportion of the water below the highest line of normal flow of the river (Motl v. Boyd, 116 Texas, 82, 286 S. W., 458). As to the water above that line, whether impounded by the district or by its arrangement with the United States Reclamation Service (Elephant Butte Dam) turned into the open channel of the river or running after rainfall in the bed of the stream, he had no interest except as a landowner in the district, taking water under its distribution system. (Pp. 642, 643).

6.—Same—Storage Water—Use by District or River Channel for Convey-
ance—Mingling With Normal Flow.

The irrigation district was within its legal rights in using the channel
of the river for conveyance of stored waters it had acquired the right to
use, though thereby commingling them with the normal flow to the use
of which the riparian proprietor had a right as such. In the absence of a
finding of injury to the riparian proprietors' rights thereby injunction
against such use of the river channel by the district was properly refused.
(Pp. 643, 644).

Error to the Court of Civil Appeals for the Eighth District,
in an appeal from El Paso County.

Parker obtained writ of error on the affirmance (260 S. W.,
667) of a judgment for defendant in his suit against the El
Paso County Water Improvement District No. 1.

*F. G. Morris,* for plaintiff in error.

The assertion by suit filed in the District Court by defendant
of the right to shut off the use of water by plaintiff from the
Rio Grande for irrigation and of the right to fix liens on his lands
for taxes to pay expenses of the Reclamation Service, and the
continued assertion of the latter right as pleaded by the plain-
tiff and found to be facts by the trial court, if not justified by
law, constitutes such cloud on the title of plaintiff in that it
assails a part of his title—the riparian right that inheres in
and forms a part of his title—as will sustain this action to clear
cloud from title, and hence a decision is required as to the rights
asserted by defendant and denied by the plaintiff. Moody v.
Holcomb, 26 Texas, 714; Titus v. Johnson, 50 Texas, 224; Day
Land and Cattle Co. v. State, 68 Texas, 526; Coleman v. Luetcke,
164 S. W., 1117.

The court erred in over-ruling appellant's first assignment of
error to the effect that the trial court erred in its conclusion of
law that plaintiff's lands were lawfully included within the Im-
provement District No. 1 and are subject to burdens incident to
the organization and operation of the District, and that plain-
tiff's lands were at all time riparian does not affect the ques-
tion. Act of Congress of 1902, known as Reclamation Act; Ex-
tention of Reclamation Act to Texas; Act of June 12, 1906; Acts
of Texas Leg. of 1905, Chap. 101; Acts of Texas Leg. of 1917,
Chaps. 87 and 88; Board of Water Engineers v. McKnight, 229
S. W., 301; Irrigation Ditch Co. v. Hudson, 85 Texas, 587; Secs.
1, 2, 3, 15, 24, 34, 47, Chap. 88, Acts 1917.

If the Legislature might lawfully have included riparian own-
ers in improvement districts for taxation for support of irri-
gation works without taking over their riparian rights or charg-

ing them for water, it has not done so through existing statutes. As no provision is made by statute for taking into said districts riparian lands without interference with riparian rights, no authority exists to include riparian lands in such districts for taxation only, as Chapter 87, Section 95, Laws of 1917, requires charging all members for water at the same rate and this is consistent with the construction that no riparian lands were allowed by Chapters 88, Laws of 1917, to be taken into Improvement Districts. Degetau v. Mayer, 145 S. W., 1054; Campbell v. Jones, 230 S. W., 710; Moody v. Holcomb, 26 Texas, 714.

*Burges & Burges,* for defendant in error.

A conservation and reclamation district organized under authority of Section 59, Article 16 of the Constitution of Texas, and the statutes enacted in pursuance thereof, is not dependent for the validity of its organization or the exercise of its powers upon the Federal Reclamation Act, nor upon the Act of the Legislature of Texas, of 1905, Chapter 101, authorizing the appropriation of waters in Texas by the United States; nor upon the Act of the Legislature of Texas, of 1917, Chapter 57, although such district is authorized to enter into contract with the United States for the construction or acquisition of irrigation and drainage works. Art. 16, Sec. 59, Constitution of the State of Texas; Gen. Laws First Called Ses. 28th Leg., Chap. 101; Gen. Laws Reg. Ses. 35th Leg., Chap. 87; Gen. Laws Reg. Ses. 35th Leg., Chap. 88; Gen. Laws 2nd Called Ses. 36th Leg., Chap. 28; Gen. Laws 4th Called Ses. 35th Leg., Chap. 25; Fed. Reclamation Act, 32 Stats., at Large, 388; Art. Extending ·Reclamation Act of Texas, 34 Stats., at Large, 259; Ogburn v. Barstow, Ward County, Texas, Drainage Dist., 230 S. W., 1036.

Nothing in the Conservation Amendment to the State Constitution, nor in the terms of the Federal Reclamation Act, excludes riparian lands from the benefits confered by the organization of a conservation and reclamation district, nor exempts such lands from payment of taxes legally levied and assessed by such district. Same authorities.

The construction and operation of works for the storage and distribution of water for the irrigation of arid lands is a public use, and all property within the legal boundaries of a district organized for that purpose, may legally be subjected to taxation for the purpose of providing and operating such works. T. & P.

Ry. Co. v. Ward County Irrig. Dist. No. 1, 251 S. W., 212; Falbrook Irrig. Dist. v. Bradley, 164 U. S., 112; 41 Law Ed., 369.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

El Paso County Improvement District No. 1 is an Irrigation District, organized under the Act of 1917, Chapter 87, Acts of the Thirty-fifth Legislature. It embraces 85,000 acres of land, 81,000 acres of which are riparian to the Rio Grande River. The district was organized in 1917, and subsequent to the adoption of the Conservation Amendment to the Constitution and the enactment of Chapter 25, Acts of the Fourth Called Session of the Thirty-fifth Legislature became a Conservation and Reclamation District in accordance with the terms of the statute. The plaintiff in error owns a tract of 380 acres of land in the district, which is riparian to the Rio Grande River. At some time, the exact date of which is not shown by the record, but prior to the institution of this suit, the defendant in error entered into a contract with the United States of America, through the Department of the Interior, for the construction and acquisition of certain storage, distribution, and drainage works, for the distribution of certain flood waters of the Rio Grande, filed upon and appropriated by the United States in or about the year 1906, impounded by the Elephant Butte Dam of the U. S. Reclamation Service, and for the distribution of certain drainage waters. There is no statement of facts before us, and neither the pleadings nor findings of fact of the trial court disclose the terms of this agreement, a description of which we have taken from the defendant in error's pleading. The trial court found that such a contract had been entered into, and that the organization of the district and the validity of this contract with the United States had been confirmed and approved by a judgment duly entered in the District Court. However, the pleadings in this confirmation suit and judgment are not in the record. We therefore are not informed as to the parties to the litigation, nor what was embraced in and concluded by the decree. This suit, however, is not one to set aside that judgment. The plaintiff in error in his petition alleges that the Improvement District has, and exercises under the laws of the State of Texas, and of the United States, such rights and authority as by law are conferred under the reclamation laws of the United States for the distribution of water to the lands in the Rio Grande valley in El Paso County; that under this authority the district excavates ditches for irrigation and drainage in the valley, and

assesses charges for the use of the reclamation service and for the construction and maintenance of such irrigation system. The amount which the district assesses and collects as charges and expenses is not alleged. Plaintiff in error does allege that the district has set up a claim of right to collect charges from him for the use of water from the river on his land, which is described by metes and bounds in the petition. He alleges that the district has heretofore set up and claimed a charge and lien on his land for past accrued charges for the use of water on the land, and for other expenses of the reclamation service, and asserted the right to deny him the use of water to irrigate his land. He alleges that the district filed suit against him in the 41st District Court of El Paso County, to enjoin him from the use of water from the river on his land for irrigation purposes, until he executed a contract to the district in the usual form of those executed by other owners of land in the valley, whereby he should agree to pay for the water to be used on the land and part of the expenses for the reclamation service and for water theretofore used from the river. He states, however, that this suit was dismissed by the District, but that "this was done of record without prejudice to said improvement district's rights" against him. He states that in virtue of his riparian rights he has the right to take water from the river for the irrigation of his land, for which purpose he built a ditch in 1907, and has ever since maintained and used it. He alleges that he still owns the right to use the ditch and to take water therefrom, for the purpose of irrigating his lands by the use of his riparian water from the river; that he has been taking water from the channel of the Rio Grande for this purpose, and in this way, and intends to continue to do so. He states that he has not signed or executed any contract with the district to pay for the use of said water, or for charges, assessments, or taxes, for the maintenance of a system of storing water for irrigation; and he denies all authority of the Improvement District to require him to pay any of said charges for the privilege of using water from the Rio Grande, as he has heretofore used it in virtue of his riparian rights. He states that the statutes and contracts under which the district exercises authority to store, control, and distribute water for irrigation purposes, and charge therefor, have no application to his riparian rights as he has pleaded them. He says that the laws and contract under which the Improvement District is acting must be read and understood to apply only to the water rights acquired by the United States under its appropriation of the waters of the Rio Grande, and not to include his

riparian lands, and that he is in no manner bound thereby. He alleges that to require him to sign any agreement such as he charges the district desired him to sign, and to conform to the Improvemnt District's rules and regulations, would require him to pay value for all the water he might use, and would be in substance and effect to deprive him of the riparian rights he owns as a part of his lands, without due process of law and without adequate compensation, in violation of the due process clauses of the Federal and State Constitutions. He charges that the claim of the Improvement District "of said charges and liens," and its threatened attempt to enforce the same, constitute a cloud on the title to his land, for the removal of which he brings the suit. He also states that the district threatens to immediately shut off the water flow of said river through his ditch, and on to said land, and to obstruct the ditch with its own construction, and thus render it impossible for him to get water through the ditch. His prayer is for an injunction against the district, enjoining it from obstructing the flow of water from the Rio Grande through his ditch, and on to parts of his land, and for judgment removing the cloud from his title, etc.

The Improvement District answered by exceptions, general denial, and special pleas, which we think unnecessary to set out. The case was tried before the court without a jury, and judgment rendered in favor of the Improvement District. On appeal by the plaintiff in error, this judgment was affirmed. 260 S. W., 667. In this judgment the trial court decreed that plaintiff in error's lands were part and parcel of the El Paso County Water Improvement District No. 1, "and are lawfully entitled to the benefits arising therefrom, and are lawfully subject to such taxes as may be from time to time lawfully levied and assessed by said district, and that the prayer of plaintiff for removal of cloud to his title to such lands should be denied, and it is so ordered." The court further found in its judgment that the district was not interfering, nor threatening to interfere, with the use by plaintiff of the irrigation ditch described in the petition, nor with the right to flow and use water therein. The court therefore denied the prayer for injunction, dismissing it "without prejudice to the right of plaintiff to introduce proceedings at any time hereafter should his use of said ditch or any water therein or thereby to which he may be claiming to be entitled be interfered with by the defendant." The court made findings of fact and law. His findings of fact, in so far as necessary, will now be stated:

The court found that the plaintiff in error had irrigated a

large portion of his land from the Rio Grande River, but for some time prior to the construction of the Elephant Butte Dam the water was insufficient to completely and efficiently irrigate it; that some crops, however, were grown by plaintiff in error thereon each year. The Improvement District uses the channel of the Rio Grande above and by plaintiff in error's land to flow water thereto and by for irrigation. The court found that prior to the Construction of the Elephant Butte Dam the supply of water in the river was inadequate to irrigate the lands in the Improvement District if generally distributed among them, but that since the construction thereof the conserved water supply is adequate for the irrigation of all lands embraced in the district, including that of plaintiff in error. The court also found that plaintiff in error did not protest the organization of the district, nor seek to have his lands removed therefrom. The eighth finding of fact by the court reads as follows:

"8. Defendant Improvement District is not interfering with, nor at present seeking to restrain, the use of water by plaintiff from the ditch described in his petition, but defendant has asserted, and does assert, the right to levy taxes upon the lands included therein, for the support of such reclamation district."

The court found that in April, 1922, the district did file suit wherein it denied plaintiff in error's right to use water for irrigation on his land, until and unless he should sign the agreement required by it, which would have charged his land with a proportionate part of the expenses for building the dam and constructing the irrigation system, and sought to enjoin plaintiff in error's use of the water until he did so, that later it dismissed this suit without prejudice. He states, however, in his finding, that *the sole right now asserted by defendant Irrigation District is a right to levy taxes upon the plaintiff's land for the support of said reclamation project.* (Italics ours). He also stated that all the land included in the district was in an arid portion of the State, and could not be successfully farmed except by irrigation.

The court rightly concluded as a matter of law that Section 59, Article 16, authorized the statute enacted by the Legislature relative to the organization of Improvement District, and that this amendment to our Constitution was not repugnant to the Constitution of the United States. He concluded, also, that the plaintiff in error's lands were lawfully included within the Improvement District, and were entitled, in common with all other riparian lands included therein, to the benefits thereby conferred, and were likewise subject to the duties and burdens inci-

dent to the organization and operation of the district; that the fact that the plaintiff in error's lands, in common with most of the lands in the district, were riparian, did not affect the question.

Since the terms of the contract of the district with the Reclamation Department of the United States are not given, either by pleadings or proof, and the purported assessments and charges for the use of the reclamation service and expenses for construction and maintenance are not shown, nor the terms of any contract or instrument by which they were sought to be imposed, given, we have no means of passing upon the question as to whether or not the claims of the district in this respect were, or are, a cloud upon plaintiff in error's land, once it is concluded that his land was rightly included in the Improvement District. If his lands are lawfully a part of the district, then we agree with the trial court that they "are entitled, in common with all other riparian lands included therein, to the benefits thereby conferred, and are likewise subject to the duties and burdens incident to the organization and operation of the district." We think his lands were rightly included in the district. There is nothing in the statutes which in the remotest degree tends to sustain the view that riparian lands are not to be embraced in Water Improvement Districts. On the contrary, in the very nature of things, the larger portion of all irrigable lands are within the watershed of streams available for irrigation, and are usually riparian to the streams. That the Water Improvement District Act, authorizing the creation of districts where the territory is in more than one county, is valid and constitutional, has recently been held by this Court. Trimmier et al. v. Carlton et al., recently decided, but not yet officially published. See also Barstow v. Ward Co. Irrigation Dist. No. 1, 177 S. W., 563 (writ refused); Texas & P. R. R. Co. v. Ward Co. Irrigation Dist. No. 1, 251 S. W., 212 (Comm. of Appeals); Hester & Roberts v. Donna Irrigation Dist. No. 1, 239 S. W., 992 (writ refused).

Acts similar to our own have universally been held to be constitutional. Kinney on Irrigation (2d Ed.), Vol. 3, Secs. 1405, 1408; Wiel on Water Rights (3d Ed.), Vol. 2, Secs. 1356, 1357; Turlock Irrigation Dist. v. Williams, 18 Pac., 379; Long on Irrigation (2d Ed.), Sec. 297; Fallbrook Irrigation Dist. v. Bradley, 164 U. S., 112, 164; Re Bonds of the Medera Irrigation Dist., 14 L. R. A., 755.

Our attention has not been called to any authority which even tends to support plaintiff in error's contention that riparian

land cannot be included in an Irrigation District. Nor has our attention been called to a single Irrigation District case where riparian land was not embraced in the district; nor a single statute which excludes it. Courts and lawmakers alike appear to have assumed that a district, otherwise valid, could embrace riparian land.

The Improvement District was originally organized under Chapter 87, Acts of 1917, and subsequently, after the adoption of the Conservation Amendment to the Constitution and the passage of an Enabling Act, it became in the statutory way a Conservation and Reclamation District, operating under the Conservation Amendment to the Constitution. At the time of its original creation however, and the passage of the Act under which it was organized, the Conservation Amendment to the Constitution had not been adopted. The authority for the enactment of the law of its original organization was Section 52, of Article 3, of the Constitution. These are the Section and Article which have been before the courts recently, and all are familiar with them. They authorize the issuance of bonds upon a vote of the people in "any county, any political subdivision of a county, any number of adjoining counties or any political subdivision of the State or any defined district now or hereafter to be described and defined within the State of Texas," for the following purposes:

"(a) The improvement of rivers, creeks and streams to prevent overflows and to permit of navigation thereof or irrigation thereof, or in aid of such purposes.

"(b) The construction and maintenance of pools, lakes, reservoirs, dams, canals and waterways for the purposes of irrigation, drainage or navigation or in aid thereof.

"(c) The construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes or in aid thereof."

It will be observed that this section of the Constitution authorized the creation of Irrigation Districts, Road Districts, Drainage, Navigation, and other Districts, without any distinction as to land which might be included in any of them. It no more exempts riparian land from Irrigation Districts than it exempts such land from Road Districts or Navigation Districts, or districts organized for the prevention of overflows, which we call Levee Districts. Were we to say that this section of the Constitution did not authorize the inclusion of riparian land in Irrigation Districts organized under it, we would be compelled to say that riparian land was likewise excluded from every other class

of district authorized by the constitutional provision. It states in very definite terms over what territory the agencies of the government created under it may exercise their power. As shown by that portion of the section quoted, "any county," "any political subdivision of a county," "any number of adjoining counties," "any political subdivision of the State," "any defined district now or hereafter to be described or defined," is authorized, upon proper vote, to engage in the improvements subsequently specified. It will be seen by reading the section that it also expressly says that any of these districts or subdivisions "may or may not include towns, villages, or municipal corporations." It is thus apparent that the Constitution contemplated that riparian as well as other land might be included within any of the districts named; for it would be absurd to say that riparian land could not be included in a county, or any other of the various political subdivisions or defined districts designated. The fact also that such districts were authorized to include towns, villages, or municipal corporations, clearly shows that it was not intended that any land within the boundaries of such districts should be exempt from the burdens authorized to be imposed by such governmental agencies, provided the inclusion was in accordance with the rules of due process governing the creation of local Improvement Districts. But that riparian land could not be included in an irrigation or other district, merely because riparian, is clearly negatived by the terms of the constitutional provision.

When we come to the Conservation Amendment to the Constitution, Section 59, Article 16, under which the district here involved now exists, the meaning is equally as clear that riparian lands may be included. The Conservation Amendment provides that there may be created within the State, or the State may be divided into, such number of Conservation and Reclamation Districts as may be deemed essential to the accomplishment of the purposes of the amendment. It is declared that these districts shall be governmental agencies, and bodies politic and corporate, "with such powers of government, and with the authority to exercise such rights, privileges, and functions concerning the subject matter of this amendment, as may be conferred by law." The purposes of the amendment are specified in Subdivision (a) thereof, and among these purposes is: "the reclamation and irrigation" of "arid, semi-arid, and other lands needing irrigation." The language quoted necessarily embraces riparian land, since land of that character may be arid, semi-

arid, or may need irrigation, in the same manner and to the same extent as nonriparian land.

The district here involved is now, as we have previously stated, a Conservation and Reclamation District, and the unchallenged finding of the trial court that the land of plaintiff in error "is in the arid portion of Texas and cannot be successfully farmed save by irrigation," clearly brings it within the class of lands which the Constitution expressly declares may be embraced in Conservation and Reclamation Districts. It is apparent to us, therefore, that under the constitutional provision effective at the time the land of plaintiff in error was first placed in the Improvement District, as well as under the Conservation Amendment to the Constitution, the fact that it was riparian did not exclude it from the operation of the laws by which the district was originally created, or by which it became a Conservation and Reclamation District. In other words, under both provisions of the Constitution, riparian land could be placed in an Irrigation District.

It is equally certain that the fact that defendant in error might not desire his land placed in the district, that he might not desire to irrigate it at all, that he could irrigate it from a different source, or that it was riparian land, would not prevent its inclusion in the district under the Due Process Clause of the Federal Constitution. Fallbrook Irrig. Dist. v. Bradley, 164 U. S., 112; Hester & Roberts v. Donna Irrig. Dist., 239 S. W., 992 (writ refused).

In the Fallbrook Case, supra, the admitted facts were that the Bradleys were the owners of 40 acres of land in the Irrigation District, worth $5,000, subject "to a beneficial use without the necessity of water for irrigation, and that it has been used beneficially for the past several years for purposes other than cultivation with irrigation." (164 U. S., 166). The admitted facts stated, the extracts from the argument of Mr. Joseph Choate, counsel for the Bradleys, appearing in the report of the case, as well as the opinion of the court itself, show that the question was squarely before the Supreme Court as to whether or not lands which the owners did not care to irrigate, or which might not need irrigation from the improvements proposed by a district, could under the Constitution be included in an Irrigation District. The Supreme Court held they could be included, holding that the irrigation of land was a public purpose, and the use of water thereon a public use, and that Irrigation Districts, such as the one before us, were public corporations, with power to tax any land included in the district, provided its inclusion

was in accordance with the rules of due process. The court in part said:

"If it be essential or material for the prosperity of the community, and if the improvement be one in which all the landowners have to a certain extent a common interest, and the improvement cannot be accomplished without the concurrence of all or nearly all of such owners by reason of the peculiar natural condition of the tract sought to be reclaimed, then such reclamation may be made and the land rendered useful to all and at their joint expense. In such case the absolute right of each individual owner of land must yield to a certain extent or be modified by corresponding rights on the part of other owners for what is declared upon the whole to be for the public benefit."

The court sustained the validity of the California Irrigation Act, which was the primary question involved in the case, as well as the right to include the land of the Bradleys in the district. See also Cooley on Taxation (4th Ed.), Vol. 1, Sec. 206.

The authorities also hold generally that property though not receiving a direct benefit, including cities and towns, may be included in an Irrigation District. Fallbrook Irrig. Dist. v. Bradley, supra; Modesta Irrig. Dist. v. Treager, 88 Calif., 334, 26 Pac., 237; Re Bonds of Madera Irrig. Dist., 14 L. R. A., 755, 772; Long on Irrig. (2d Ed.), Sec. 297, p. 529; Kinney on Irrig. (2d Ed.), Vol. 3, Sec. 1412.

On the whole, we conclude that plaintiff in error's contention that his land, because riparian, could not be included in the Improvement District, is without merit, and it is overruled.

If the plaintiff in error owns a ditch, he cannot be deprived of that property, nor its use, without consent or grant, or some form of due process. Long on Irrig. (2d Ed.), Sec. 118. But, as we understand the record in this case, and the decree and findings of the trial court, no effort is being made by defendant in error to take plaintiff in error's property right in his ditch, or to deprive him of its use. As to that he therefore was not entitled to an injunction.

The plaintiff in error, as a riparian, has the right to take his just correlative proportion of riparian water from the Rio Grande River, and conduct it to and use it on his land. Long on Irrig. (2d Ed.), Secs. 34, 35; Watkins Land Co. v. Clements, 98 Texas, 578; Board of Water Engineers v. McKnight, 111 Texas, 82, 92.

The Improvement District cannot take that water and distribute it without his consent, provided he desires to and does use it. The right of the riparian to his just proportion of riparian water

which flows by his land is an incident to his ownership of the land, and is a part and parcel of the land. It is property within the constitutional guaranties. Long on Irrig. (2d Ed.), Sec. 34; Board of Water Engineers v. McKnight, 111 Texas, 82, 92.

If the plaintiff in error does not take his proportionate share of the riparian water and use it, then 'that proportion to which he is entitled, so long as he does not take it, under the modified rules of the common law applicable in the arid or semi-arid States, increases the residue of riparian water in the river available for the use of others, including those whose lands are in the Improvement District, and may be taken out of the river by· them, or by the district for distribution, if they have authorized it to do so. Long on Irrig. (2d Ed.), Sec. 31; Kinney on Irrigation (2d Ed.), Vol. 1, Sec. 549, Vol. 2, Sec. 1611; Farnham on Water Rights, Vol. 2, Sec. 497; San Joaquin, etc. Irrig. Co. v. Fresno Flume & Irrig. Co., 35 L. R. A. (N. S.), 832; Modock, etc. v. Booth, 36 Pac., 431; Humphreys-Mexia Co. v. Arseneaux and Texas Co. v. Burkett, (both decided by this Court at the present term, but not yet officially reported.)

However, we do not understand that the Improvement District claims any right to take plaintiff in error's proportionate share of the riparian water, if he desires to use it, or that it is interfering with plaintiff in error's right to do so. As we understand the record, the district only claims the right to take from the river the flood waters impounded by the Elephant Butte Dam by the United States Reclamation Service (or other flood waters, if any, to which it may be entitled), and the just proportion of riparian water which the riparian proprietors in the district have severally consented it shall take and distribute. This the district has the right to do. As to this water, plaintiff in error has no claim or right. As a riparian owner, he is only justly entitled to his proportion of the riparian water, which is the water below the highest line of the normal flow of the river. Motl v. Boyd, 286 S. W. 458. As to the water above that line, whether impounded by the United States Reclamation Service or running after rainfall in the bed of the stream, plaintiff in error has no interest except as a landowner in the district taking water under the distribution system of the district.

The plaintiff in error in his supplemental petition alleged that the defendant in error had turned its impounded waters into the open channel of the Rio Grande, and permitted the same to mix and mingle with the natural and ordinary flow of the surface and underground waters of the river, to such an extent and

in such manner that the same became a part of the riparian waters of the stream, and therefore subject to use by him.

The only finding of fact which has come to our notice in the record on this question is that in the second paragraph of the trial court's findings, in which the court found that the defendant in error used the channel of the Rio Grande above and by plaintiff in error's land to flow the water to and by plaintiff's for irrigation. Since there is no statement of facts in the record, we must assume that the finding of the court is justified by the facts, and that the facts authorized no further finding as to the use of the channel of the river for the purposes stated, or as to the confusion of waters, if any, thereby brought about. The defendant in error in using the channel and banks of the Rio Grande for delivering its storm, flood, or rain water from the place of storage to the places of use, was acting clearly within the terms of the statute, and within its legal rights, regardless of the question of riparian rights. Rev. Stats. 1925, Art. 7548; Long on Irrig. (2d Ed.), Sec. 117; Kinney on Irrig. (2d Ed.), Vol. 2, Sec. 832; Wiel on Water Rights (3d Ed.), Vol. 1, Secs. 38, 38a, 39, 40; Hoffman v. Stone, 7 Calif., 46; Miller v. Wheeler, 23 L. R. A., (N. S.), 1065; Butte Canal & D. Co. v. Vaughn, 70 Am. Dec., 769; Wiggins v. Muscupiobe Co., 32 L. R. A., 667; Wintchuma Water Co. v. Pogue, 90 Pac., 362; see also many cases in the notes to the sections of the texts cited above.

Since it is clear the Improvement District had the right to use the channel of the Rio Grande to convey its stored waters, or the stored waters to which it was entitled, to the lands of the district for use, the absence of a finding in this record of any injury thereby to the plaintiff in error shows, as to this feature of his case, that the injunction was properly denied.

We are of the opinion that the judgments of the trial court and Court of Civil Appeals are correct, and ought to be affrmed. Both judgments are accordingly affirmed.