COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-122-CV
 
  
IN 
RE GERALD HARDEN                                                             RELATOR
 
  
------------
 
ORIGINAL 
PROCEEDING
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Relator’s 
wife, Ellen Harden, died on December 28, 2000. Relator, Ellen’s daughter from 
a prior marriage, and Ellen’s sister all claimed entitlement to Ellen’s 
estate.  On December 17, 2001, the trial court appointed Bonnie J. Robison 
Temporary Administrator of Ellen’s estate. On November 17, 2003, the Temporary 
Administrator filed her “Interim Inventory, Appraisement, and List of 
Claims,” listing, among other items, two accounts with North Dallas Bank & 
Trust as pay-on-death accounts with Relator listed as the pay-on-death 
beneficiary and listing a Charles Schwab Money Market account as a 
joint-tenancy-with-right-of-survivorship account payable to Relator.  
Paperwork documenting the creation of the pay-on-death accounts and the 
joint-tenancy-with-right-of-survivorship account was attached to the Temporary 
Administrator’s interim inventory.  See Tex. Prob. Code Ann. § 439(a), (b) 
(Vernon 2003) (setting forth requisites for creation of pay-on-death and 
joint-tenancy-with-right-of-survivorship accounts); Stauffer v. Henderson, 
801 S.W.2d 858, 862-63 (Tex. 1990) (explaining probate code section 439(a)).
        Also 
on November 17, 2003, the Temporary Administrator filed a Motion for Turnover 
with the trial court stating that she had an outstanding attorney’s fee bill 
for $16,726.21 and that she expected a bill from a court-ordered tracing 
expert.  Because only $20,369.71 remained in the estate account controlled 
by the Temporary Administrator, she asked that, pursuant to probate code section 
442, fifty thousand dollars of “nonprobate assets”[2] 
that are subject to Relator’s control—including the proceeds of the 
pay-on-death accounts, the joint-tenancy-with-right-of-survivorship account, and 
life insurance policy proceeds paid to Relator as beneficiary—be turned over 
to her.  On December 8, 2003, the trial court conducted a hearing on the 
Temporary Administrator’s motion for turnover of nonprobate assets. The trial 
court signed a January 6, 2004 turnover order, which included the following 
provision:[3]
 
As 
the assets remaining in the Ellen Harden Estate that are in the possession of 
the Temporary Administrator are insufficient to pay ongoing expenses of 
administration, IT IS FURTHER ORDERED, pursuant to Texas Probate Code §442, 
that Gerald Harden turn over to the Temporary Administrator within fourteen (14) 
days from the date of this Order is signed $50,000.00, which represents Ellen 
Harden’s community property interest and/or separate property interest in the 
following accounts owned by Ellen Harden at the time of her death, which were 
closed by Gerald Harden and deposited into Gerald Harden’s Charles Schwab 
accounts:

[the 
order then lists the two North Dallas Bank & Trust pay-on-death accounts and 
the joint-tenancy-with-right-of-survivorship account at Charles Schwab]

 
Relator 
claims that the trial court abused its discretion by ordering him to turn over 
nonprobate assets to the Temporary Administrator. We agree.
        Texas 
Probate Code section 442 does authorize the use of multi-party account funds to 
pay debts, taxes, and expenses of administration under certain circumstances. Tex. Prob. Code Ann. § 442 (Vernon 
Supp. 2004).  Three of the circumstances that must exist, however, are that 
(1) the assets of the estate must be insufficient to pay the debts, taxes, and 
expenses of administration; (2) the estate’s personal representative must have 
received a written demand by a surviving spouse, a creditor, or one acting for a 
minor child of the decedent; and (3) a proceeding to assert the liability of a 
multi-party account to an estate must be commenced no later than two years 
following the death of the decedent.  Id.
        Here, 
section 442 cannot be used to authorize payment of administration expenses of 
Ellen’s estate from nonprobate assets—the North Dallas Bank & Trust 
pay-on-death accounts and the joint-tenancy-with-right-of-survivorship account 
at Charles Schwab—because the Temporary Administrator did not present evidence 
at the December 8, 2004 hearing of section 442's statutory requisites.  No 
evidence exists that a written demand was made in accordance with section 442, 
and no evidence exists that a proceeding to assert the liability of the 
multi-party accounts was commenced within two years of Ellen’s death.  
Ellen died on December 28, 2000; the Temporary Administrator filed her motion 
seeking turnover of nonprobate assets on November 17, 2003.[4]  
Consequently, we hold that the trial court abused its discretion by invoking 
section 442 to require Relator to pay $50,000 in nonprobate assets to the 
Temporary Administrator.
        Relator 
also contends that the trial court abused its discretion by entering an order 
and a subsequent modified order authorizing the Temporary Administrator to pay 
up to $5,900 from Ellen’s estate to obtain a copy of Ellen’s medical 
records.  Ellen’s daughter filed an “Emergency Motion to Authorize 
Expenditure of Funds for Medical Records.”  The motion alleged that 
“[t]he requested medical records . . . are necessary to identify and 
characterize assets of the Estate and to ascertain the validity of certain 
beneficiary designations.”  Ellen’s daughter and her sister claim that 
Ellen was not of sound mind when she executed various documents and that, 
accordingly, certain nonprobate assets in Relator’s possession are actually 
estate assets.  Following a hearing, the trial court signed a March 17, 
2004 order authorizing the Temporary Administrator to spend ”up to 
$4,000" of estate monies to obtain copies of Ellen’s medical 
records.  After discovering that the fees for obtaining copies of Ellen’s 
medical records would exceed $4,000, the Temporary Administrator filed a Motion 
to Modify Order Authorizing Payment to Obtain Medical Records.  The trial 
court conducted a second hearing and entered a April 19, 2004 order authorizing 
the Temporary Administrator to spend “up to $5,900" of estate monies to 
obtain copies of Ellen’s medical records.
        Relator 
claims that the trial court abused its discretion by entering the March 17, 2004 
and the April 19, 2004 orders requiring Ellen’s estate to bear the costs of 
obtaining copies of Ellen’s medical records.  Relator claims that the 
fees associated with obtaining a copy of Ellen’s medical records are 
litigation costs that should be born by Ellen’s daughter or her sister and 
hypothesizes that next the Temporary Administrator will want Ellen’s estate to 
pay for an expert to interpret Ellen’s medical records.  The Temporary 
Administrator, on the other hand, agues that she has a fiduciary obligation to 
the estate and its beneficiaries and needs Ellen’s medical records to enable 
the trial court to properly classify assets: that is, she impliedly argues that 
some of the nonprobate assets in Relator’s possession should be classified as 
part of Ellen’s estate.
        The 
Temporary Administrator’s fiduciary obligation does not extend to nonprobate 
assets.  See Punts v. Wilson, No. 06-03-144-CV, 2004 WL 1175489, at 
*3 (Tex. App.—Texarkana May 28, 2004, no pet.) (holding independent executor 
owed no fiduciary duty to residuary beneficiary concerning accounts not included 
in decedent’s estate).  The Temporary Administrator, provided the trial 
court, as an attachment to her initial “Interim Inventory, Appraisement, and 
List of Claims,” the paperwork demonstrating that Ellen set up the North 
Dallas Bank & Trust pay-on-death accounts and the 
joint-tenancy-with-right-of-survivorship account at Charles Schwab as nonprobate 
assets.  See Tex. Prob. Code 
Ann. § 439(a), (b).  Accordingly, these accounts have not been 
adjudicated as part of Ellen’s probate estate for purposes of the Temporary 
Administrator’s fiduciary obligations. Punts, 2004 WL 1175489, at 
*3.  Consequently, they pass outside of Ellen’s estate to the 
pay-on-death beneficiary and the joint tenant.  See Tex. Prob. Code Ann. § 439(a), 
(b).  We hold that the trial court abused its discretion by authorizing the 
Temporary Administrator to expend estate funds to obtain copies of Ellen’s 
medical records to discharge a nonexistent fiduciary obligation concerning 
nonprobate assets.
        Relator 
claims that his remedy at law or by appeal is inadequate to rectify the trial 
court’s abuse of discretion in ordering him to turn over $50,000 in nonprobate 
assets and in authorizing the Temporary Administrator to expend up to $5,900 in 
estate monies to obtain copies of Ellen’s medical records.  Relator 
points out that article I, section 19 of the Texas Constitution provides that 
“[n]o citizen of this State shall be deprived of life, liberty, property, 
privileges or immunities, or in any manner disfranchised, except by the due 
course of the law of the land.” Tex. Const. art. I, § 19.  He 
claims that the trial court, by ordering him to pay money he owns to the 
Temporary Administrator without any adjudication that he does not own the money, 
violated his constitutional due process rights: “[The Temporary Administrator 
would take money in [Relator’s] possession to fund litigation against 
[Relator] over the funds taken—all without any trial.”  He also claims 
that the trial court’s order requiring the estate to pay for Ellen’s medical 
records out of the funds he was required to pay to the Temporary Administrator 
deprived him of due process for the same reason.  We agree.
        By 
statute, specifically probate code section 439(a) and (b), the funds in the two 
North Dallas Bank & Trust pay-on-death accounts and in the 
joint-tenancy-with-right-of-survivorship account at Charles Schwab belong to 
Relator absent an adjudication otherwise.  An after-the-fact trial or 
appellate remedy is inadequate to guard Relator’s property interest in the 
$50,000 that the trial court has required him to pay to the Temporary 
Administrator—and which the trial court has authorized the Temporary 
Administrator to spend—because Relator is entitled to an adjudication 
concerning ownership before, not after, he is deprived of his property interest 
in the money.[5]  See Tex. Const. art. I, § 19; see also 
Perry v. Del Rio, 67 S.W.3d 85, 92 (Tex. 2001) (holding redistricting 
triggers due course of law provision, requiring notice and opportunity to be 
heard at meaningful time and in meaningful manner); Univ. of Tex. Med. Sch. 
at Houston v. Than, 901 S.W.2d 926, 930 (Tex. 1995) (holding student has 
constitutionally protected liberty interest in graduate education that must be 
afforded procedural due process); Parker v. El Paso County Water Improvement 
Dist. No. 1, 116 Tex. 631, 297 S.W. 737, 742 (1927) (holding owner of 
irrigation ditch cannot be deprived of property or its use without some form of 
due process).
        We 
conditionally grant the writ.  The trial court is ordered to set aside the 
portion of the January 6, 2004 order requiring Relator to turn over $50,000 in 
nonprobate assets, as well as the March 17, 2004 and April 19, 2004 orders 
authorizing expenditure of estate funds to obtain copies of Ellen Harden’s 
medical records.  The writ will issue only if the trial court fails to 
comply.
 
 
                                                          SUE 
WALKER
                                                          JUSTICE
 
 
PANEL 
B:   HOLMAN, GARDNER, and WALKER, JJ.
 
DELIVERED: 
July 15, 2004


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
The Temporary Administrator’s motion denominates the assets she seeks as “nonprobate.” 
Consequently, we also use this term, but do not intend to imply any holding or 
adjudication as to the ultimate classification of these assets following any 
adjudicatory proceeding in the trial court.
3.  
The trial court’s January 6, 2004 order is titled, “Order of Instruction to 
Temporary Administrator (Declaratory Judgment, Turnover of Assets and 
Mediation).” The order addresses a variety of matters, but Relator seeks to 
vacate only the portion of the order requiring Relator to pay $50,000. Thus, we 
limit our discussion to this portion of the order.
4.  
Via a supplemental brief filed in this court, the Temporary Administrator raises 
several arguments purportedly excusing the failure to timely institute a a 
probate code section 442 “proceeding” asserting the availability of the 
multi-party accounts. We decline to address these arguments concerning the third 
prong of section 442's statutory requisites because, in any event, probate code 
section 442's second prong remains unsatisfied. Tex. Prob. Code Ann. § 442; see also 
Tex. R. App. P. 47.1 (stating 
opinion need only address issues necessary to final disposition).
5.  
Relator points out that the Temporary Administrator’s general bond provides 
him with no remedy at law because it indemnifies against malfeasance only, not 
against actions taken by the Temporary Administrator pursuant to court order. See 
generally Tex. Prob. Code Ann. 
§ 215 (Vernon 2003) (providing that bond is required if it appears that 
executor without bond is wasting, mismanaging, or misapplying estate).