In re Gerald Harden

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-122-CV

IN RE GERALD HARDEN RELATOR

------------

ORIGINAL PROCEEDING

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Relator’s wife, Ellen Harden, died on December 28, 2000.  Relator, Ellen’s daughter from a prior marriage, and Ellen’s sister all claimed entitlement to Ellen’s estate.  On December 17, 2001, the trial court appointed Bonnie J. Robison Temporary Administrator of Ellen’s estate.  On November 17, 2003, the Temporary Administrator filed her “Interim Inventory, Appraisement, and List of Claims,” listing, among other items, two accounts with North Dallas Bank & Trust as pay-on-death accounts with Relator listed as the pay-on-death beneficiary and listing a Charles Schwab Money Market account as a joint-tenancy-with-right-of-survivorship account payable to Relator.  Paperwork documenting the creation of the pay-on-death accounts and the joint-tenancy-with-right-of-survivorship account was attached to the Temporary Administrator’s interim inventory.  
See
 
Tex. Prob. Code Ann.
 § 439(a), (b) (Vernon 2003) (setting forth requisites for creation of pay-on-death and joint-tenancy-with-right-of-survivorship accounts); 
Stauffer v. Henderson
, 801 S.W.2d 858, 862-63 (Tex. 1990) (explaining probate code section 439(a)). Also on November 17, 2003, the Temporary Administrator filed a Motion for Turnover with the trial court stating that she had an outstanding attorney’s fee bill for $16,726.21 and that she expected a bill from a court-ordered tracing expert.  Because only $20,369.71 remained in the estate account controlled by the Temporary Administrator, she asked that, pursuant to probate code section 442, fifty thousand dollars of “nonprobate assets”
(footnote: 2) that are subject to Relator’s control—including the proceeds of the pay-on-death accounts, the joint-tenancy-with-right-of-survivorship account, and life insurance policy proceeds paid to Relator as beneficiary—be turned over to her.  On December 8, 2003, the trial court conducted a hearing on the Temporary Administrator’s 
motion for turnover of nonprobate assets.  The trial court signed a January 6, 2004 turnover order, which included the following provision:
(footnote: 3)
 As the assets remaining in the Ellen Harden Estate that are in the possession of the Temporary Administrator are insufficient to pay ongoing expenses of administration, IT IS FURTHER ORDERED, pursuant to Texas Probate Code §442, that Gerald Harden turn over to the Temporary Administrator within fourteen (14) days from the date of this Order is signed $50,000.00, which represents Ellen Harden’s community property interest and/or separate property interest in the following accounts owned by Ellen Harden at the time of her death, which were closed by Gerald Harden and deposited into Gerald Harden’s Charles Schwab accounts:

[the order then lists the two North Dallas Bank & Trust pay-on-death accounts and the joint-tenancy-with-right-of-survivorship account at Charles Schwab]

Relator claims that the trial court abused its discretion by ordering him to turn over nonprobate assets to the Temporary Administrator.  We agree.

Texas Probate Code section 442 does authorize the use of multi-party account funds to pay debts, taxes, and expenses of administration under certain circumstances. 
 
Tex. Prob. Code Ann.
 § 442 (Vernon Supp. 2004).  Three of the circumstances that must exist, however, are that (1) the assets of the estate must be insufficient to pay the debts, taxes, and expenses of administration; (2) the estate’s personal representative must have received a written demand by a surviving spouse, a creditor, or one acting for a minor child of the decedent; and (3) a proceeding to assert the liability of a multi-party account to an estate must be commenced no later than two years following the death of the decedent.  
Id.

Here, section 442 cannot be used to authorize payment of administration expenses of Ellen’s estate from nonprobate assets—the North Dallas Bank & Trust pay-on-death accounts and the joint-tenancy-with-right-of-survivorship account at Charles Schwab—because the Temporary Administrator did not present evidence at the December 8, 2004 hearing of section 442's statutory requisites.  No evidence exists that a written demand was made in accordance with section 442, and no evidence exists that a proceeding to assert the liability of the multi-party accounts was commenced within two years of Ellen’s death. Ellen died on December 28, 2000; the Temporary Administrator filed her motion seeking turnover of nonprobate assets on November 17, 2003.
(footnote: 4)  
Consequently, we hold that the trial court abused its discretion by invoking section 442 to require Relator to pay $50,000 in nonprobate assets to the Temporary Administrator.  

Relator also contends that the trial court abused its discretion by entering an order and a subsequent modified order authorizing the Temporary Administrator to pay up to $5,900 from Ellen’s estate to obtain a copy of Ellen’s medical records.  Ellen’s daughter filed an “Emergency Motion to Authorize Expenditure of Funds for Medical Records.”  The motion alleged that “[t]he requested medical records . . . are necessary to identify and characterize assets of the Estate and to ascertain the validity of certain beneficiary designations.”  Ellen’s daughter and her sister claim that Ellen was not of sound mind when she executed various documents and that, accordingly, certain nonprobate assets in Relator’s possession are actually estate assets.  Following a hearing, the trial court signed a March 17, 2004 order authorizing the Temporary Administrator to spend ”up to $4,000" of estate monies to obtain copies of Ellen’s medical records.  After discovering that the fees for obtaining copies of Ellen’s medical records would exceed $4,000, the Temporary Administrator filed a Motion to Modify Order Authorizing Payment to Obtain Medical Records.  The trial court conducted a second hearing and entered a April 19, 2004 order authorizing the Temporary Administrator to spend “up to $5,900" of estate monies to obtain copies of Ellen’s medical records. 

Relator claims that the trial court abused its discretion by entering the March 17, 2004 and the April 19, 2004 orders requiring Ellen’s estate to bear the costs of obtaining copies of Ellen’s medical records.  Relator claims that the fees associated with obtaining a copy of Ellen’s medical records are litigation costs that should be born by Ellen’s daughter or her sister and hypothesizes that next the Temporary Administrator will want Ellen’s estate to pay for an expert to interpret Ellen’s medical records.  The Temporary Administrator, on the other hand, agues that she has a fiduciary obligation to the estate and its beneficiaries and needs Ellen’s medical records to enable the trial court to properly classify assets: that is, she impliedly argues that some of the nonprobate assets in Relator’s possession should be classified as part of Ellen’s estate.

The Temporary Administrator’s fiduciary obligation does not extend to nonprobate assets.  
See Punts v. Wilson
, No. 06-03-144-CV, 2004 WL 1175489, at *3 (Tex. App.—Texarkana May 28, 2004, no pet.) (holding independent executor owed no fiduciary duty to residuary beneficiary concerning accounts not included in decedent’s estate).  The Temporary Administrator, provided the trial court, as an attachment to her initial “Interim Inventory, Appraisement, and List of Claims,” the paperwork demonstrating that Ellen set up the North Dallas Bank & Trust pay-on-death accounts and the joint-tenancy-with-right-of-survivorship account at Charles Schwab as nonprobate assets.  
See
 
Tex. Prob. Code Ann.
 § 439(a), (b).  Accordingly, these accounts have not been adjudicated as part of Ellen’s probate estate for purposes of the Temporary Administrator’s fiduciary obligations.  
Punts
, 2004 WL 1175489, at *3.  
Consequently, they pass outside of Ellen’s estate to the pay-on-death beneficiary and the joint tenant.  
See
 
Tex. Prob. Code Ann.
 § 439(a), (b).  We hold that the trial court abused its discretion by authorizing the Temporary Administrator to expend estate funds to obtain copies of Ellen’s medical records to discharge a nonexistent fiduciary obligation concerning nonprobate assets.

Relator claims that his remedy at law or by appeal is inadequate to rectify the trial court’s abuse of discretion in ordering him to turn over $50,000 in nonprobate assets and in authorizing the Temporary Administrator to expend up to $5,900 in estate monies to obtain copies of Ellen’s medical records. Relator points out that article I, section 19 of the Texas Constitution provides that “[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.”  
Tex. Const.
 art. I, § 19.  He claims that the trial court, by ordering him to pay money he owns to the Temporary Administrator without any adjudication that he does not own the money, violated his constitutional due process rights:  “[The Temporary Administrator would take money in [Relator’s] possession to fund litigation against [Relator] over the funds taken—all without any trial.”  He also claims that the trial court’s order requiring the estate to pay for Ellen’s medical records out of the funds he was required to pay to the Temporary Administrator deprived him of due process for the same reason.  We agree.

By statute, specifically probate code section 439(a) and (b), the funds in the two North Dallas Bank & Trust pay-on-death accounts and in the joint-tenancy-with-right-of-survivorship account at Charles Schwab belong to Relator absent an adjudication otherwise.  An after-the-fact trial or appellate remedy is inadequate to guard Relator’s property interest in the $50,000 that the trial court has required him to pay to the Temporary Administrator—and which the trial court has authorized the Temporary Administrator to spend—because Relator is entitled to an adjudication concerning ownership before, not after, he is deprived of his property interest in the money.
(footnote: 5)  
See
 
Tex. Const.
 art. I, § 19
; 
see also Perry v. Del Rio
, 67 S.W.3d 85, 92 (Tex. 2001) (holding redistricting triggers due course of law provision, requiring notice and opportunity to be heard at meaningful time and in meaningful manner); 
Univ. of Tex. Med. Sch. at Houston v. Than
, 901 S.W.2d 926, 930 (Tex. 1995) (holding student has constitutionally protected liberty interest in graduate education that must be afforded procedural due process); 
Parker v. El Paso County Water Improvement Dist. No. 1
, 116 Tex. 631, 297 S.W. 737, 742 (1927) (holding owner of irrigation ditch cannot be deprived of property or its use without some form of due process).

We conditionally grant the writ.  The trial court is ordered to set aside the portion of the January 6, 2004 order requiring Relator to turn over $50,000 in nonprobate assets, as well as the March 17, 2004 and April 19, 2004 orders authorizing expenditure of estate funds to obtain copies of Ellen Harden’s medical records.  The writ will issue only if the trial court fails to comply.

SUE WALKER

JUSTICE

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.

DELIVERED: July 15, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
The Temporary Administrator’s motion denominates the assets she seeks as “nonprobate.”  Consequently, we also use this term, but do not intend to imply any holding or adjudication as to the ultimate classification of these assets following any adjudicatory proceeding in the trial court. 

3:
The trial court’s January 6, 2004 order is titled, “Order of Instruction to Temporary Administrator (Declaratory Judgment, Turnover of Assets and Mediation).”  The order addresses a variety of matters, but Relator seeks to vacate only the portion of the order requiring Relator to pay $50,000.  Thus, we limit our discussion to this portion of the order.

4:
Via a supplemental brief filed in this court, the Temporary Administrator raises several arguments purportedly excusing the failure to timely institute a a probate code section 442 “proceeding” asserting the availability of the multi-party accounts.  We decline to address these arguments concerning the third prong of section 442's statutory requisites because, in any event, probate code section 442's second prong remains unsatisfied.  
Tex. Prob. Code Ann.
 § 442; 
see also 
Tex. R. App. P.
 47.1 (stating opinion need only address issues necessary to final disposition).

5:
Relator points out that the Temporary Administrator’s general bond provides him with no remedy at law because it indemnifies against malfeasance only, not against actions taken by the Temporary Administrator pursuant to court order.  
See generally
 
Tex. Prob. Code Ann.
 § 215 (Vernon 2003) (providing that bond is required if it appears that executor without bond is wasting, mismanaging, or misapplying estate).